IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**UNITED STATES OF AMERICA,**

v.                                                            No:    5:00cr3/SPM
                                                                           5:03cv249/SPM/MD

**RUBEN CARLOS SIERRA,**
          **Defendant.**

_____

REPORT AND RECOMMENDATION

This matter is before the court upon defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 521). The government has responded (doc. 537), and defendant has replied (doc. 542). An evidentiary hearing was held on January 12, 2005, at which defendant was represented by counsel and testified. (Doc. 564). After hearing testimony, and after a careful review of the record and the arguments presented, it is the opinion of the undersigned that the motion should be denied.

BACKGROUND

Defendant and six others were charged in a second superceding indictment with conspiracy to possess with intent to distribute more than 1000 kilograms of marijuana. Defendant's case was severed for trial along with that of co-defendant Richard Bolden. Defendant was found guilty by a jury of a conspiracy dealing with 100 or more kilograms but less than 1000 kilograms of marijuana, and he was

sentenced to 264 months in prison followed by four years supervised released.  His appeal was unsuccessful, and he now seeks collateral relief.

## LEGAL ANALYSIS

A.  General Standards of Review

   1.  <u>Section 2255 review.</u>

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker,* 198 F.3d 811, 813 n.5 (11th Cir. 1999).  As recently explained by the Eleventh Circuit, "[r]elief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice."  *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice.").  The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional

violation "has probably resulted in the conviction of one who is actually innocent. . . ."

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *Ferguson v. United States,* 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.

### 2. Ineffective assistance of counsel.

All but one of defendant's grounds for relief rely on his claim that his counsel was ineffective, thereby depriving him of his constitutionally guaranteed right to counsel. Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000). In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688, 104 S.Ct. at 2065; *see Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992).  "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")).  Counsel's  performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*,  466 U.S. at 689, 104 S.Ct. at 2065.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."  *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).  Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).  To  establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.  *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 122 S.Ct. 234 (2001).

B.  Defendant's Grounds for Relief

    1.  <u>Ineffective assistance of counsel - deficiencies before trial.</u>

Defendant first faults his attorney for numerous deficiencies prior to the trial of the case.  Pared to its essence, defendant's argument is that (1) his attorney did not know how strong the government's case was or, if he did, he did not disclose it to defendant; (2) unbeknownst to defendant, the government had overwhelming evidence against him, and had he known how precarious his position was, he would have pleaded guilty with or without a plea agreement; and, (3) his attorney did not explain how the sentencing guidelines would affect a possible sentence, did not seek out a plea agreement with the government, did not advise defendant that he could plead guilty without an agreement, and did not advise him that it would be in his best interest to do so.  As a result, he says, his sentence was not reduced for acceptance of responsibility as it should have been.  These facts are set out in defendant's memorandum in support of his § 2255 motion, which is declared under penalty of perjury to be true (doc. 521).

The government has filed an affidavit from defendant's counsel which refutes the foregoing factual allegations (doc. 537, exh. 7).  Because the court could not resolve disputed facts on the written record, a hearing was held on January 12, 2005, at which defendant, who was represented by appointed counsel, testified.  Defense

counsel, Luis Saenz, Esq., also testified.  After hearing the evidence, the court finds that defendant has not produced evidence sufficient to satisfy his burden of showing that his counsel was constitutionally deficient.

During the relevant time, Mr. Saenz had been practicing criminal law in Texas for more than fifteen years (hearing transcript, pp. 65, 66).  He served as an Assistant District Attorney from 1984 until 1990, and served as the District Attorney in Brownsville, Texas from 1990 until 1996.  He was an active trial lawyer during that entire period, and tried approximately 100 jury trials, including eight capital murder cases (hearing transcript, p. 66).  He went into private practice in early 1997 as a criminal defense lawyer, and among his trials were three capital murder cases, none of which resulted in a death penalty (hearing transcript, pp. 66-67).  He has also practiced in the federal courts since he has been in private practice.

Mr. Saenz was retained in this case in January 2000 by defendant's wife and sister (hearing transcript, p. 67).  He was told that defendant, who was at that time in custody in Panama City, Florida, wanted to plead guilty and exonerate his sister, at whose home a quantity of marijuana was found.  Defendant was released from custody pending trial, and counsel had frequent contact with him.  In fact, each time he talked to the defendant, which was essentially weekly, his wife and sister would come in the next day saying defendant wanted further explanation on some issue (hearing transcript, pp. 71-72).  Mr. Saenz is a native Spanish speaker, and is fluent in English.  He communicated in Spanish with defendant, who speaks English, but communicates better in Spanish, his native tongue (hearing transcript, pp. 127-128).

When defendant was indicted but his sister was not, he noticeably cooled to the idea of pleading guilty (hearing transcript, p. 79).  When Mr. Saenz received discovery from the government and tried to discuss the case with defendant, problems arose.  Defendant was willing to agree that he was involved in dealing with the 726 pounds (approximately 330 kilograms) of marijuana that had been seized in Florida and at his sister's home at the time of his arrest and immediately thereafter,

but denied any further involvement (hearing transcript, pp. 79, 125). Counsel requested discovery from the government, and found that the government expected to prove that more than 1000 kilograms of marijuana were involved (hearing transcript, p. 80). As time went on the figure rose to 2000 to 3000 kilograms. (hearing transcript, p. 35). Mr. Saenz discussed all these figures with the defendant, and specifically discussed how each amount of drugs would affect any possible sentence (hearing transcript, pp. 37-47). When a superceding indictment was handed down claiming involvement in more than 1000 kilograms, defendant was told that he was looking at a minimum mandatory ten year sentence (hearing transcript, pp. 52-53).

Mr. Saenz also discussed the advisability of a guilty plea, and recommended that under the circumstances it would be best for defendant to do so (hearing transcript, p. 44). He had talked to the Assistant United States Attorney about the possibility of a "deal," but any deal was flatly refused (hearing transcript, p. 81). Nevertheless, he explained to defendant that with cooperation there was a good chance at a sentence reduction (hearing transcript, pp. 37-47). There was a problem, however. Defendant adamantly refused to plead guilty to any amount of marijuana above the original 726 pounds (hearing transcript, p. 130). He was particularly adamant in denying being involved with 42 pounds of marijuana that had been seized in Ft. Myers, Florida, claiming that he had never been to Ft. Myers (hearing transcript, pp. 45, 130). In Mr. Saenz' words, defendant simply "shut down," and would do nothing but proclaim his innocence beyond 726 pounds, even after he was told that the 42 pounds from Ft. Myers would not make any practical difference (hearing transcript, p. 45). Mr. Saenz even confronted the defendant with discovery showing that there was surveillance of him in Ft. Myers (hearing transcript, p. 131). Finally, Mr. Saenz told defendant that if he was going to stick with 726 pounds, they really had no choice but to go to trial (hearing transcript, pp. 79-82).

**Defendant testified that Mr. Saenz never discussed the sentencing guidelines, acceptance of responsibility, plea agreements, 5K1.1 motions or Rule 35 motions, Ft. Myers, trial strategy, his sister, the dangers of testifying, the second superceding indictment that alleged more than 1000 kilograms of marijuana, or any possible sentence beyond five years, except on the first day of trial when he said there was at worst an eight year possibility.  Rather, defendant said he put all his trust in Mr. Saenz and that thereafter his lawyer decided everything (hearing transcript, p. 105-118).**

**Based on the Mr. Saenz' experience as a criminal lawyer, his obvious understanding of the federal sentencing guidelines, his consistency in explaining how he worked on the case, and his office notes, which essentially confirmed his numerous discussions with the defendant and the rough contents of those discussions, the court finds Mr. Saenz' testimony to be entirely credible, and accepts the facts as he stated them as true.**

**The defendant has therefore failed to show that his attorney's assistance before trial was below an objective and reasonable professional norm.  It may very well be that in the end the defendant did not understand what was happening, or did not understand the workings of the sentencing guidelines as they applied to his case, but the court is convinced that defense counsel did everything he possibly could to help defendant understand.  Mr. Saenz' only failure in this case was that of failing to make his client understand what was happening and what the ramifications of his refusal to plead were.  Failing to convince a client who is unable or unwilling to understand is not ineffective assistance of counsel.** *Johnston v. Singletary*, **162 F.3d 630, 642 (11th Cir. 1998) ("[W]hen the strategy an attorney might otherwise pursue is virtually foreclosed by his client's unwillingness to facilitate that strategic option, it is difficult for our court, in a collateral proceeding, to characterize as 'unreasonable' counsel's decision to abandon that otherwise preferable strategy.") Defendant is not entitled to relief on this ground.**

### 2. Ineffective assistance of counsel - deficiencies during trial.

Defendant also contends that his counsel's performance was constitutionally deficient during the trial because counsel (1) encouraged him to testify when it was obviously against his best interest to do so, and (2) conceded defendant's guilt to the jury. Neither of these claims has merit.

Mr. Saenz testified, as outlined above, that defendant was willing to admit to 726 pounds of marijuana, but no more. Becky Garcia, a cooperating co-conspirator, had been identified as a government witness. Defendant had assured Mr. Saenz that he had never had any dealings with Ms. Garcia beyond the admitted 726 pounds (hearing transcript, p. 85). When she testified, however, she named defendant as being involved in numerous other transactions, as many as 15 to 20, each involving 20 to 30 pounds of marijuana, including the Ft. Myers shipment. In short, according to Mr. Saenz, her testimony "sunk us." (Hearing transcript, pp. 63, 86).

After court recessed for the day Mr. Saenz told the defendant that he really had no choice but to testify. Mr. Saenz' usual procedure, as in this case, was to assume that the defendant would not testify, but to prep him for testifying in case of a "unique situation." (Hearing transcript, p. 61). The unique situation arose with Ms. Garcia's bombshell testimony. Defendant was informed fully on the dangers of testifying with one exception. Mr. Saenz did not warn the defendant that if he testified, and if the jury did not believe him, his sentence could be enhanced for obstruction of justice (hearing transcript, pp. 55-56, 58). He did not expect the defendant to be untruthful (*id.*). Their strategy all along, with which defendant agreed, was to admit the 726 pounds and deny any further involvement.

Defendant testified that he had no desire to testify but that his attorney made him do so, which had the effect of admitting his guilt. Particularly, if Mr. Saenz had told him that he might get a sentence enhancement if he testified untruthfully, he definitely would not have testified (hearing transcript, p. 119-120).

*Case No: 5:00cr3/SPM; 5:03cv249/SPM/MD*

The court finds, for the reasons stated above, that Mr. Saenz' testimony is entirely credible, and accepts his version of the facts as true. Moreover, the court finds that defendant's claim that he would not have testified had he been told of a possible obstruction of justice enhancement is not credible. Indeed, almost nothing defendant testified to during the evidentiary hearing before the undersigned had the ring of truth to it. Defendant's testimony that Mr. Saenz told him nothing of what was going on but simply told him that they would go to trial, and that he had to testify, is absolutely rejected as untruthful. It simply flies in the face of reality given Mr. Saenz' testimony and clear high qualifications and experience.

Therefore, defendant has failed to show that his attorney's assistance during trial was below an objective and reasonable professional norm. As to failure to warn defendant on the possible obstruction enhancement if he testified, which Mr. Saenz freely conceded, the court makes no finding on whether that by itself is deficient performance, because defendant has failed to show that he was prejudiced by the omission. The court finds that the defendant was willing to testify and was going to minimize his participation whether he was warned against it or not.

3.  Rule 32 error.

Next, defendant contends that the court "refused to make a clear finding that explained its rationale for accepting Sierra's Presentence Investigation Report's (PSR) recommendation in the face of a contrary jury finding," thereby violating Rule 32 (doc. 521, p.22). That rule, in relevant part, provides that the court must append its findings of contested facts from a sentencing hearing to the presentence investigation report, Rule 32(i)(3)(C), which defendant says the court failed to do. The record shows otherwise; the court's findings are attached to the PSR.

Beyond the technical claim, defendant argues that the real error was in overruling the jury verdict. This is the same argument, in a different guise, that defendant made to the Eleventh Circuit based on *Apprendi v. New Jersey*, 530 U.S.

466, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000), which is discussed more fully below. It is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *United States v. Nyhuis,* 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994), *cert. denied*, 514 U.S. 1112, 115 S.Ct. 1966, 131 L.Ed.2d 856 (1995); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects"). Here, the claim was raised on appeal and he is not entitled to relief.

4. <u>Sentencing Guidelines.</u>

On the morning of the evidentiary hearing in this case the Supreme Court announced its decision in *United States v. Booker,* 125 S.Ct. 738, 2005 WL 50108 (2005), holding that mandatory application of the United States Sentencing Guidelines was unconstitutional. At the conclusion of testimony, defendant's appointed counsel sought leave for defendant to raise, once again, *Apprendi* and its now progeny, *Blakely*[1] and *Booker*. Although there was some discussion on whether that would be profitable, the record is unclear on whether defendant or his appointed counsel was moving to amend the instant motion. Assuming for the sake of discussion that defendant has properly put the issue before the court, defendant is not entitled to relief.

---

[1] *Blakely v. Washington*, ____ U.S. ____, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

*Case No: 5:00cr3/SPM; 5:03cv249/SPM/MD*

In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. at 2362-63. *See also Ring v. Arizona*, 536 U.S. 584, 589, 122 S.Ct. 2428, 2432, 153 L.Ed.2d 556 (2002) (concluding under *Apprendi* that "[c]apital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment."). Defendant raised an *Apprendi* claim on direct appeal, and the Eleventh Circuit held that *Apprendi* could not be applied retroactively because "*Apprendi* applies to statutory maximum sentences, not to calculations under the United States Sentencing Guidelines. *United States v. Le*, 256 F.3d 1229, 1240 (11th Cir. 2001)." Mr. Sierra did not raise the sentencing issue in his § 2255 motion. Doing so would have been fruitless because the issue was decided on appeal.[2]

Since *Apprendi* was decided, the Supreme Court has decided two cases that relate to federal sentencing, *Blakely v. Washington*, and *United States v. Booker.*

As clarified in *Blakely*:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. See Ring, supra*, 536 U.S. at 602, 122 S.Ct. at 2428 ("'the maximum he would receive if punished according to the facts reflected in the jury verdict alone'" (*quoting Apprendi, supra*, 503 U.S. at 483, 120 S.Ct. at 2348)) . . . . In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.

124 S.Ct. at 2537-38 (emphasis in original, some citations omitted); *see also In re Dean*, 375 F.3d 1287, 1290 (11th Cir. 2004) (quoting *Blakely*). In *United States v.*

---

[2] As noted above, a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *United States v. Nyhuis,* 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994), *cert. denied*, 514 U.S. 1112, 115 S.Ct. 1966, 131 L.Ed.2d 856 (1995); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981).

*Booker,* 125 S.Ct. 738, 2005 WL 50108 (2005), the Supreme Court extended its holding in *Blakely* to the Sentencing Guidelines, holding that the mandatory nature of the federal guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial. This does not mean, however, that *Booker* can be applied to cases in which the conviction is final, a fact which is crucial to the court's consideration of the instant motion. Both language within *Booker*, discussed *infra*, and Supreme Court precedent indicate otherwise.

In *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) the Supreme Court held that the Sixth Amendment's guarantee of the right to a jury trial applied to the states. In *DeStephano v. Woods*, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968) the Court held that *Duncan* would not be given retroactive application - that it applied only to those cases that were not final at the time it was decided, and that it did not apply to cases on collateral attack. The Court reasoned that the right to a jury trial was fundamental to our system of justice, but that a trial without a jury would not necessarily result in an inaccurate verdict. Therefore, it would not be necessary to grant a new trial to every person convicted without a jury.

In *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) the Supreme Court held that only a jury, not a judge, could make findings on the aggravating factors necessary to invoke the death penalty. In *Schriro v. Summerlin*, __ U.S. __, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) the Court held that *Ring* applied only to those cases that were not final at the time it was decided, and that it did not apply to cases on collateral attack. The Court reasoned that the rule announced in *Ring* was a procedural rule, not a substantive one, because it did not define an element of a crime. Rather, it determined the manner in which fact finding is done. The *Schriro* Court relied on *DeStephano, supra*, noting that "[i]f . . . a trial held entirely without a jury was not impermissibly inaccurate, it is hard to see how a trial in which a judge finds only aggravating factors could be." 124 S.Ct. at 2526.

**This is instructive on the application of *Booker*. The *Booker* Court expressly noted that its holding was to be applied retroactively to "all cases ... pending on direct review or not yet final." *Booker* at \*29. It did not announce that the new rule would apply retroactively for cases on collateral attack, such as this one. This reasoning necessarily follows from *DeStephano* and *Schriro*. In those cases the Court held that it was not impermissibly inaccurate to conduct a criminal trial entirely without a jury, or for a judge alone to find aggravating factors necessary to trigger a death sentence. Based on those holdings, it is difficult to conclude that a hearing in which a judge finds only aggravating factors that result in an increased sentence could be impermissibly inaccurate. See *Schriro,* 124 S.Ct. at 2526.**

**Moreover, the *Booker* Court cited prior precedent with approval, stating that "[T]he constitutional safeguards that figure in our analysis concern not the identity of the elements defining criminal liability but only the required procedures for finding the facts that determine the maximum permissible punishment." *Booker,* 2005 WL 50108 at \*14 (citations omitted). The significance of this is that unlike substantive rules, new rules of procedure generally are not retroactive. *Schriro v. Summerlin*, __ U.S. __, 124 S.Ct. 2519, 2523, 2526, 159 L.Ed.2d 442 (2004) ("[I]t does not follow that, when a criminal defendant has had a full trial and one round of appeals in which the State faithfully applied the Constitution as we understood it at the time, he may nevertheless continue to litigate his claims indefinitely in hopes that we will one day have a change of heart.").**

**Finally, the Eleventh Circuit has concluded that neither *Booker* nor *Blakely* applies retroactively to cases on collateral review. *Varela v. United States,* ___ F.3d ___, 2005 WL 367095 (11th Cir. 2005); see also *In re Anderson,* ___ F.3d ___, 2005 WL 123923 (11th Cir. 2005) (holding that only the Supreme Court can make a new rule retroactive on collateral review, and that it must do so explicitly). This defendant has had his full trial and one round of appeals. Since *Booker*'s effect on sentencing**

guidelines cases is not retroactive on collateral review, it is not applicable to § 2255 motions, and defendant would not ordinarily be entitled to relief.

This case has a different twist from the ordinary, however. The jury found that defendant was responsible for less than 1000 kilograms of marijuana, but the trial judge attributed more. A primary rationale for not making *Apprendi* and its progeny retroactive is the Supreme Court's reasoning that under these circumstances, a factual finding by a judge is entitled to as great a presumption of correctness as the decision of a jury. Here the two conflicted, however, and if *Apprendi* and its progeny teach nothing else, it is that a jury decision is constitutionally preferred over a judge decision on contested factual issues in criminal cases. It would seem, therefore, that this case may be an exception to the blanket refusal to apply *Booker* retroactively. Petitioner has raised an *Apprendi* claim at every step of the case and has been diligent in pursuing relief. Therefore, his claim arguably ought at least to be considered.

In *United States v. Rodriquez*, __ F.3d __, 2005 WL 272952 (11th Cir., February 5, 2005), a case that was still on direct appeal when *Booker* was decided, the Eleventh Circuit held that where *Apprendi/Blakely/Booker* was not raised in the trial court, the appellate court reviews only for plain error. The court found that Rodriquez had met the first two prongs of plain error - there was error and the error was plain at the time of appellate review - but that he could not meet the third prong because he could not show that the error affected the outcome of the proceedings below. The court reasoned that the effect of the alleged error was uncertain because it was impossible to tell whether the trial judge would have imposed the same sentence had the guideline range been advisory rather than mandatory. It further reasoned that the case could not be remanded to the trial court for such a determination because remand would first require a finding that the trial court would likely have done what it would be asked to do on remand. Consequently, Rodriquez did not meet the third prong of the plain error test, and was not entitled to relief.

This case, however, is not on appeal, and the *Apprendi/Blakely/Booker* issue was raised in the trial court and on appeal so it may be appropriate for further consideration.

The reliability of judge-made decisions compared to jury decisions was not the only reason for making these types of cases non-retroactive. Fundamental to the retroactivity issue, indeed fundamental to justifying the reliability of judge-made decisions in cases of this nature, is the *kind* of issue being decided. In particular, the Supreme Court's non-retroactivity jurisprudence is primarily founded on the distinction between procedures used to determine the maximum possible punishment and methods of determining the actual elements that define criminal activity. *Booker*, 2005 WL 50108 at *14. The trial court's decision in this case did not define any elements of the crime, but instead dealt only with sentencing factors.[3] Therefore, although it is tempting to recommend that the district judge reconsider his sentencing decisions in light of *Booker*, it is the opinion of the undersigned that binding precedent holding *Booker* not to be retroactive on collateral review would not allow it.

Accordingly, it is respectfully RECOMMENDED that defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (doc. doc. 521) be DENIED.

At Pensacola, Florida, this 24th day of February, 2005.

/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

---

[3] The court's reasoning in so doing was that although the jury found the defendant responsible for a lesser amount of drugs than that actually attributed to him, the defendant could be sentenced to the term of imprisonment set forth in the PSI because it was within the statutory prescribed maximum term of imprisonment. (See Doc.378 at 32)

*Case No: 5:00cr3/SPM; 5:03cv249/SPM/MD*

**NOTICE TO PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See*, 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**